PETER M. WALLIN v. EASTERN RAILWAY COMPANY OF
MINNESOTA.[1]

May 10, 1901.

Nos. 12,226—(24).

| 83 | 149 |
| f83 | 186 |
| 83 | 187 |
| 83 | 149 |
| 84 | 454 |

### Railway—Collision between Hand Cars.

The complaint in this action states that appellant operated a railroad in the state of Wisconsin, and engaged a "bridge gang" at West Superior to operate from that point the repair and reconstruction of bridges along its line. As a part of the consideration of the hiring contract, appellant agreed daily to transport the men to and from West Superior to the station nearest the place of their day's labor by means of its regular trains, and for their transportation from such station to their point of work they were furnished hand cars, to be propelled by themselves. While respondent, who was one of the crew, was riding on a hand car from the place of that day's work to a station where they would board appellant's train back to West Superior, another hand car, propelled by other members of the same gang, overtook the first car, and was negligently propelled against it, derailing it and causing injury to respondent. One of the handles on the front end of the rear car, as it was then approaching, was broken off; and, because of its absence, the other handle on the same end of that car caused the preceding car to be pushed laterally and derailed. *Held*, that the complaint states a cause of action, in the following particulars:

### Benson v. Chicago Distinguished.

1. The respondent and other members of the crew were employees of appellant, and at the time of the injury were engaged in their duties as such, within the meaning of Laws (Wis.) 1893, c. 220. Benson v. Chicago, St. P., M. & O. Ry. Co., 78 Minn. 303, distinguished.

### Negligence.

2. Appellant was guilty of contributory negligence in failing to provide suitable rules and regulations for the control and operation of hand cars under such circumstances.

### Defective Handle—Consequences of Negligence.

3. The defective handle may, under the circumstances, have been the proximate cause of the injury, and the proper rule in such case is as follows: "A person guilty of negligence should be held responsible for all the consequences which a prudent and experienced person, fully ac-

[1] Reported in 86 N. W. 76.

quainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would at the time of the negligent act have thought reasonably possible to follow if they had occurred to his mind." Christianson v. Chicago, St. P., M. & O. Ry. Co., 67 Minn. 94, approved.

Appeal by defendant from an order of the district court for Hennepin county, Simpson, J., overruling a demurrer to the complaint. Affirmed.

*W. E. Dodge,* for appellant.

Plaintiff and his companions were not, at the time of the accident, engaged in the discharge of their duties under their employment. The case is not distinguishable from Benson v. Chicago, St. P., M. & O. Ry. Co., 78 Minn. 303.

There is no merit in the contention that defendant had made no rule regulating the use of hand cars so as to prevent the operators of one from running against and colliding with another: (a) Because such rule would, at most, only regulate the conduct of employees engaged in the furtherance of the master's business in the operation of its railroad, and would not apply to mere licensees permitted to use hand cars thereon simply for their own convenience and accommodation. (b) The law does not require the master to promulgate rules for the protection of its servants where the risks and dangers are obvious, or arise from the negligence of co-servants engaged in the common employment. Berrigan v. New York, 131 N. Y. 582; Benson v. Chicago, St. P., M. & O. Ry. Co., supra; Morgan v. Hudson, 133 N. Y. 666; Rutledge v. Missouri, 110 Mo. 312; Voss v. Delaware, 62 N. J. L. 59.

The absence of one of the handles from one corner of the hand car following that on which plaintiff was riding was not the proximate cause of the derailment and consequent injury to plaintiff, and the derailment was not such a consequence as, under the facts pleaded, could or ought to have been foreseen by defendant as likely to follow the absence of the handle. Patterson, Ry. Ac. Law, 11, et seq.; 1 Bailey, Pers. Inj., § 1014; Weisel v. Eastern Ry. Co., 79 Minn. 245; Steffen v. Chicago, 46 Wis. 259; Cincinnati, N. O. & T. P. Ry. Co. v. Mealer, 6 U. S. App. 86; Lee v. Central, 86

Ga. 231; Louisville v. Southwick, 16 Ind. App. 486; Reid v. Evansville, 10 Ind. App. 385; Denver v. McComas, 7 Colo. App. 121; Sellars v. Richmond, 94 N. C. 654.

*Ludvig Arctander,* for respondent.

LEWIS, J.

The complaint in this action states, in substance: That the defendant is incorporated under the laws of the state of Wisconsin, owning and operating a line of railway between St. Paul, Minnesota, and West Superior, Wisconsin, and that about twenty-two miles of its tracks extend through the state of Wisconsin. That in the year 1899 defendant was engaged in repairing and reconstructing the wooden bridges and culverts on that division of its line extending from the city of West Superior to the village of Sandstone, Minnesota, for which purpose defendant employed a gang of about twelve men, comprising carpenters and helpers, designated as the "bridge gang." That plaintiff was a carpenter by trade, and on May 12, 1899, was employed by defendant to work as a member of the bridge gang, to assist in the repairing and reconstructing of bridges and culverts on the Wisconsin side of defendant's line of railway. That all members of such bridge gang were, at the time of their employment by defendant, located at West Superior. That such bridge-repair work was then and there carried on by defendant from West Superior as the starting point, and as a part of the contract of employment of the plaintiff, and in consideration of his agreement to perform such services, defendant undertook, promised, and agreed with plaintiff to carry him over its line of railway every morning from West Superior to the places along its tracks where he would be required to work during the day, and every evening back again to West Superior, by means of regular trains to the nearest station, and from such point to the place of work by hand cars. It is further alleged: That on October 4, 1899, and during the whole of that day, such bridge gang, including plaintiff, were, in the course of their employment with defendant, engaged in repairing a certain bridge on defendant's line of railway at a point in Wisconsin about eleven miles southwest of West Superior. That at about

5.30 o'clock in the afternoon of that day, while so engaged in such employment, plaintiff, with the other members of the bridge gang, was ordered by defendant to go upon one of defendant's hand cars, so furnished, and to assist in propelling the same over defendant's tracks and railroad line towards Saunders, for the purpose of enabling plaintiff and members of the bridge gang to take defendant's passenger train back to West Superior. That, while plaintiff was engaged in his duty as such employee in propelling such hand car, defendant then and there caused another hand car also to be propelled over such track by other servants of defendant, members of the same bridge gang, in close proximity to and immediately following the hand car propelled by plaintiff. The car in charge of the other members of the bridge gang was defective, in that one of the handles on the front end of the car, as it was then proceeding, was broken off, and the car was so carelessly and negligently handled by the parties in charge of it that, without fault on plaintiff's part, and without any warning or notice, it ran into and collided with the preceding car, upon which plaintiff was riding, and by reason of the absence of the handle the preceding car was pushed off the track and derailed, thereby injuring plaintiff. It is then charged that defendant was guilty of negligence by its failure to provide reasonable rules and regulations to control the running of hand cars upon its tracks. The complaint then sets forth Laws (Wis.) 1893, c. 220; which provides that a railway company shall be liable for damages sustained within that state by any employee of such company, without contributory negligence on his part, when injuries are occasioned by any defective apparatus, etc., or while engaged in operating trains, and while engaged in the performance of his duty as such employee, which injuries shall have been caused by carelessness or negligence of any other employee. This complaint was demurred to upon the ground that it does not state facts sufficient to constitute a cause of action, and, the demurrer being overruled, defendant appeals.

Defendant attacks the complaint upon three independent grounds: First, that plaintiff and his fellow workers were not, at the time of plaintiff's injury, employees, engaged in their

duties as such, within the purpose and meaning of the Wisconsin act; second, that, under the circumstances alleged in the complaint, defendant was not required to furnish rules regulating the use and operation of hand cars; third, that the absence of one of the handles from the following car was not the proximate cause of plaintiff's injury, and that the derailment of the car was not such a consequence, under the facts pleaded, as could or ought to have been foreseen by defendant as likely to follow the absence of the handle.

1. In support of the first proposition appellant relies upon the case of Benson v. Chicago, St. P., M. & O. Ry. Co., 78 Minn. 303, 80 N. W. 1050. In that case the railway company was engaged in repairing and resurfacing its track, and, for convenience, kept and maintained, on a side track near where the repairs were being made, a number of cars for the boarding and lodging of the men. When the necessities of the work required the men to be separated some distance from these cars, the railway company furnished hand cars for the convenience of the men, on which to transport themselves to and from their occupation; and, while plaintiff in that action was riding upon a hand car between the place of his employment and the boarding cars, another hand car, carrying other employees, engaged in similar work, overtook and collided with it, whereby the injury was occasioned. It was held that at the time of the injury the men in charge of the hand cars were not engaged in the discharge of their duties under their employment, within the meaning of the Wisconsin act. The decision rests upon the ground that defendant had no control over the men at that time, was not boarding them, had not undertaken to transport them to and from their work, and that the hand cars were furnished merely for the convenience of the employees, who were in no sense acting in the performance of their regular duties.

The facts stated in the complaint we are now considering are entirely different. While there is an apparent lack of candor and fullness in the allegations of the complaint upon the question whether or not the wages of the men covered the entire time of their absence from West Superior, yet we think it must be inferred from the statements therein contained that the employment

for each day commenced at the time they left West Superior, and ended at the time of their return. It is stated that the men were employed at West Superior; that the work of repairing and reconstructing was conducted from that point; that, as a part of the consideration of their employment, the defendant agreed to transport them to and from the places of work by the means specified; and that during the whole of the day of the occurrence of the injury they were engaged in the performance of their duties as such employees. We, therefore, consider the complaint sufficient in this respect,—that it shows with reasonable certainty that at the time of the injury not only respondent, but the other members of the bridge gang in charge of the other car, were employees of appellant, and engaged in the performance of their duties as such.

2. Conceding, then, that respondent and the other men in charge of the hand cars were employees of appellant, and as such engaged in the performance of their duties at the time of the injury, we now consider whether or not the company was required to have in force suitable rules and regulations to govern and control the operation of hand cars under such circumstances. It is well known that the operation of hand cars by men engaged in repairing a railway track is attended with considerable danger. Men frequently go in separate gangs on two cars to some point upon a railroad, and are obliged to run rapidly to avoid passing trains, and accidents are not infrequent as a result of collisions of hand cars thus operated; and it would seem that such business is of so dangerous and hazardous a character that ordinary men who are called upon to take charge of hand cars under such circumstances should be guided by reasonable rules and regulations.

In the case of Steffenson v. Chicago, M. & St. P. Ry. Co., 45 Minn. 355, 47 N. W. 1068, reference is made to the danger of operating hand cars; and in the case of Christianson v. Chicago, St. P., M. & O. Ry. Co., 67 Minn. 94, 69 N. W. 640, it appears that a rule of that company was in force which required hand cars to be kept apart for a distance of five hundred forty feet. It is true these men were not engaged in the same capacity as section men are, who remain constantly at work along the track for the purpose of repairing it, and are usually in charge of some manager or

section boss, but that fact would not lessen the duty of the master to impose rules and regulations for the operation of hand cars. It would, rather, tend to increase that duty; for there would be more necessity of reasonable regulations with respect to inexperienced men for such purposes than where a section crew is operating under the control of a manager. This requirement should not be regarded as a hardship upon a railway company, as it tends to the safety of the public as well as employees, and certainly inures to the protection of the company itself. Our conclusion is that, under such circumstances, it was negligence on the part of appellant to place its employees in charge of such defective car, and permit them to operate it in the manner stated, in the absence of reasonable rules and regulations for their guidance.

3. If the members of the bridge gang riding on the rear car were employees of defendant, and engaged in their duties as such, it follows, under the Wisconsin act, that appellant is responsible for the injury resulting by reason of the collision of the cars, provided such collision was caused by the negligence of those in control of the rear car, and without contributory negligence on respondent's part. It is charged in the complaint that the injury was occasioned in that manner, and it, therefore, in that respect, states a cause of action.

But the complaint also charges that the derailment of the first car was occasioned by the absence of a handle which had been broken off from the second car, and we have to consider if in this respect a cause of action is stated. Conceding that the rear car was negligently operated, and that it might have so collided with the forward car as to cause its derailment, even though the handle were not broken off, yet it is possible that the car might have been so operated that derailment would not have occurred except for the absence of the handle. The act in question provides as follows:

"When such injury is caused by any defect in any locomotive, engine, car, rail, track, machinery or appliance required by said company to be used by its employees in and about the business of such employment, when such defect could have been discovered

by such company by reasonable and proper care, tests or inspection, and proof of such defect shall be presumptive evidence of knowledge thereof on the part of such company."

As heretofore stated, the complaint sufficiently charges that the car in question was being used by employees of appellant in and about the business of their employment. It also appears that the defect is one that could have been discovered by reasonable and proper care or inspection; and the complaint alleges that appellant, under its contract with respondent, was required to furnish him and the other men with hand cars for the purpose of conveying them between the stations where they were required to take a train to the places where they were at work. Assuming, therefore, that there was no negligence on the part of the employees in charge of the rear car which would have derailed the front one, had the handle been in place, was the absence of the handle the proximate cause of the injury?

It will be noticed from the above-quoted section, that proof of defect in a car or appliance so furnished shall be presumptive evidence of knowledge on the part of the company that such defect existed. Objection is made to this portion of the complaint upon the ground that the missing handle was not the proximate cause of the injury, and that the derailment of the car, and resulting injury, was not such a consequence as could have been foreseen by appellant as likely to follow the absence of the handle. Handles are placed on hand cars for the purpose of lifting them off and on the track. In case it should become necessary hastily to remove a car from a track, the absence of a handle might be the cause of delay, and, hence, consequent injury; and, if an injury were occasioned under such circumstances, it might reasonably have been anticipated. Under the circumstances of this case, it may be conceded that it could not have been reasonably anticipated that the mere absence of a handle from a car would occasion the derailment of another with which it might happen to collide. But, after knowing how it happened, and being told it was occasioned because the handles were so situated that those on the rear would strike evenly upon a preceding car, and push it evenly, we can readily understand how, if one of the handles was

broken off, the other handle might, under such circumstances, tend to push the car to one side, and thus derail it.

The question is, is it the proper rule of law that an injured person cannot recover, under such circumstances, unless the master, at the time cars were furnished to a servant and his colaborers, reasonably could have anticipated that an injury was liable to happen in that particular manner? Or is this the proper rule: That the master would be liable if it reasonably could have been foreseen that injury in some form was likely to result, even though the precise nature of it could not be anticipated? In the case of Christianson v. Chicago, St. P., M. & O. Ry. Co., supra, the workmen in charge of a rear hand car were running at such rapid speed, contiguous to the preceding one, that they were unable to stop their car, and ran over a person who fell from the first car. In that case the question was raised as to what was the proximate cause of the injury; and it was contended that plaintiff therein could not recover, because under such circumstances such a result could not reasonably have been foreseen. In the opinion attention is called directly to the confusion in the use of the word "negligence" and the term "proximate cause," and it is there stated that the correct rule is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated as likely to result in injury, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did occur. To the same effect the rule is stated in Hill v. Winsor, 118 Mass. 251.

In discussing this question, 1 Shearman & Redfield, in their work on Negligence (5th Ed.) § 28, state that the weight of authority seems to be against holding a defendant liable for all actual consequences of his wrongful acts, when they are such that no human being, even with the fullest knowledge of the circumstances, would have considered likely to occur, and, again, that the best authorities seem to be quite opposed to the theory that a defendant should be held liable only for such consequences as he ought himself to have foreseen; and they lay down as a proper rule the following:

"A person guilty of negligence should be held responsible for all the consequences which a prudent and experienced person, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would at the time of the negligent act have thought reasonably possible to follow if they had occurred to his mind."

This statement somewhat extends the definition announced in the Christianson case, is more comprehensive, and probably as perfect as it is possible to formulate an abstract proposition upon the subject. Upon first impression, such a rule might not seem applicable to the facts in this case, but the safety of all persons engaged in so hazardous a business as railroading requires that the company be held strictly to account in regard to its cars, implements, and appliances. If the handle had been in place on this car, the preceding one might have been pushed along evenly, although forcibly, without damage; and, while appellant could not reasonably have anticipated that an accident would happen in the manner it did, it would occur to any reasoning person, after being put in possession of the facts, that such a result might follow. Other cases within this rule, substantially as stated in Christianson v. Chicago, St. P., M. & O. Ry. Co., supra, are Alabama v. Chapman, 80 Ala. 615, 2 South. 738; Ehrgott v. Mayor, 96 N. Y. 264; Western v. Bailey, 105 Ga. 100, 31 S. E. 547.

Counsel for appellant cites the case of Weisel v. Eastern Ry. Co., 79 Minn. 245, 82 N. W. 576, in support of the rule of law which he contends should apply to this case. Special reference is made to a sentence quoted from the opinion in that case, as follows:

"The defendant ought not to be required to anticipate that so unusual and peculiar a combination of circumstances would occur as to occasion so extraordinary and unexpected an accident."

It is claimed this language implies that this court has abandoned the doctrine announced in Christianson v. Chicago, St. P., M. & O. Ry. Co., supra, and intends to adhere to the rule that the defendant in such case can be held liable only when it appears that the manner in which the injury took place could reasonably have been anticipated. The sentence quoted must be read in connection with what follows, and with regard to the facts in that

case. The decision is based upon the ground that the original piling of the coal in the manner stated was not in itself a negligent act, hence it followed that such fact was not the proximate cause of the injury, and upon the further ground that, if the lump of coal causing the injury was displaced by the act of plaintiff's co-servant, then, under the prior decisions of this court, the plaintiff could not recover, for the reason that such servants were not engaged in the operation of the railroad, and were not exposed to the peculiar dangers attending that business.

Order affirmed.

BROWN, J. (dissenting).

There is no substantial difference between the case at bar and the Benson case with respect to whether the employees in question were at the time of the accident engaged in the discharge of their duties as such, and the latter case should be followed and applied. There is no doubt but that plaintiff and his associates were employees of the company, but they were no more in the discharge of the duties of their employment at the time complained of than were the employees in the Benson case. In that case it appeared that the men were permitted to take and use the hand cars to transport themselves to and from their work, while in the case in hand the cars were furnished for the same purpose under an agreement upon the part of the company to do so. In response to this agreement the company furnished the cars and the workmen operated and controlled them. No one was placed in charge by the company, so far as the complaint informs us, nor did it operate the cars. This the men did for themselves. The attempt of the majority to distinguish the cases is rather strained, and without substantial elements. They say that the complaint does not candidly and fully allege whether the wages of the men covered the entire time of their absence from West Superior; yet it must be inferred from the statements therein contained that the employment for each day commenced at the time they left West Superior, and ended at the time of their return. The relevancy of this fact, conceding it to be a fact, is not apparent. It has no tendency to show that the men were engaged in repairing

or building bridges (the work for which they were employed) during the time they were returning from the active discharge of their duties to their homes in West Superior. But, whether relevant or not, the complaint will be searched in vain for any statements or suggestions that the men were engaged by the day, by the month, or by the hour. If they were engaged by the month, their wages would cover the entire time from the commencement to the end of their employment; and, if I understand the contention and theory of the court, they would be employees actually engaged in the discharge of their duties as such during all that time. It would be much better to overrule the Benson case than to indulge in a distinction inclosed within such narrow limits.

It seems very clear that, if plaintiff can recover at all in this action, it must be upon the theory that defendant negligently failed to keep and perform the agreement alleged to have been made by it to carry and transport the plaintiff, with his co-laborers, to and from their work. If this agreement was made and entered into, and in the performance thereof defendant was guilty of negligence with respect to the manner of performance, or the means provided therefor, in consequence of which plaintiff was injured, he should recover. Upon this branch of the case, plaintiff alleges two specific acts of negligence, viz.: (1) That defendant was negligent in failing to adopt and promulgate suitable rules for the operation of the hand cars; and (2) that one of the hand cars furnished the men was defective and out of repair. If the complaint can be sustained on either theory, and the alleged negligent act or omission be the proximate cause of the injury to plaintiff, he certainly has a right of action. If defendant agreed to transport the men to and from their work, it was bound to the exercise of reasonable care and prudence in the performance of the agreement. McDonough v. Lanpher, 55 Minn. 501, 57 N. W. 152. The court sustained the complaint in both respects.

1. The principle of law requiring a person engaged in a complicated or complex business to establish rules and regulations for its conduct is clearly and plainly stated in Wood, Mast. & S. § 403, as follows:

"If a master is engaged in a complex business that requires definite regulations for the safety and protection of his employees, a failure to adopt proper rules, as well as laxity in their enforcement, is negligence per se."

And by 1 Shearman & Redfield, in their work on Negligence (section 202), as follows:

"A master who employs servants in a dangerous and complicated business is personally bound to prescribe rules sufficient for its orderly and safe management."

There is nothing complicated in or about the operation of a hand car, and, although the complaint alleges that it was necessary that rules be adopted by defendant, there are no allegations that the ordinary operation of such car is at all complicated or difficult to understand or comprehend; nor are there any special facts alleged showing any necessity for such rules. In addition to the absence of such allegations of facts showing the necessity for rules, the complaint further alleges and shows that the accident in question was the result of the careless and negligent conduct of plaintiff's co-employees. Although the allegations are that the employees operating the car following the one on which plaintiff was riding were negligent and careless in the operation of the same, a fair construction of the complaint shows that their conduct was wilful and intentional as well. They deliberately ran down the car on which plaintiff was riding. I do not understand that the rule of law requiring the adoption of regulations for the conduct of a complicated business is intended to protect workmen from their own negligence. Such regulations and rules are required solely for the purpose of enabling the employees to understand and comprehend the operation and management of instrumentalities and services of a complex nature which may result in injury to them if not understood, and not to guard or protect them from their own negligent misconduct, nor shield them from dangers and risks which are apparent and obvious to a person of ordinary intelligence. Morgan v. Hudson, 133 N. Y. 666, 31 N. E. 234; Voss v. Delaware, 62 N. J. L. 59; Berrigan v. New York, 131 N. Y. 582, 30 N. E. 57. The complaint clearly takes

the case without the rule, by alleging that the injury to plaintiff was caused by the negligence of his co-employees.

2. The other ground on which plaintiff seeks to recover is that the hand car furnished by defendant to plaintiff and his co-laborers was defective and out of repair, and it is claimed that this defect was the proximate cause of the accident. The defect consists in the fact that one of the handles on the end of the car had been broken off prior to that time, and was in that condition when delivered to the employees for the purposes stated. The handles are made use of solely in lifting the cars on and off the track. They are not employed in the operation of the car. A car might be used in the ordinary and usual manner until worn out, and no accident or injury of any kind ever result from the absence of the handles. The position of the court in its attempt to connect the absence of the handles with the accident is unsound. It is said that it might become necessary hastily to remove the car from the track; that the absence of the handle might cause delay in doing so, and result in some injury; and that, if an injury might be caused or occasioned under such circumstances, the accident in question is one that might reasonably have been anticipated, and one for which it is liable in damages. It is very far from clear just how the mere absence of this handle could, in any essential degree, delay the men in removing the car from the track. But, conceding that it might, it does not follow that the company was bound to know and to anticipate that it might come in collision with another car, and force the car collided with off the track in the manner set out in the complaint. The rule of proximate cause is stated very clearly in Christianson v. Chicago, St. P., M. & O. Ry. Co., 67 Minn. 94, 69 N. W. 640, as follows:

"If a person had no reasonable ground to anticipate that a particular act would or might result in any injury to any body, then, of course, the act would not be negligent at all; but, if the act itself is negligent, then the person guilty of it is equally liable for all its natural and proximate consequences, whether he could have foreseen them or not."

It cannot be said, in reason and good sense, that permitting the hand car in question to remain without a handle was an act of

negligence. The handle had no connection with the ordinary operation of the car. All four handles might have been absent, and the management of the car or its operation in no way interfered with. The court in that case further says:

"Otherwise expressed, the law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen. Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow."

But for the wilful, careless, and negligent conduct of the men in charge of the car following the one on which the plaintiff was riding, no accident to plaintiff's car would have happened at all. It was their wilful and intentional running down of plaintiff's car which was the direct and proximate cause of his injury. Conceding that the car was defective because of the absence of the handle, the negligent and careless conduct of plaintiff's co-employees in so running down his car, and thus causing the derailment, was an intervening, efficient cause of the accident, and the absence of the handle only a remote agency. The defendant was not bound to contemplate such a result. It appears to me, clearly, that plaintiff has no cause of action because of the alleged defective condition of the hand car. The case is very much, in so far as this branch of it is concerned, like that of Weisel v. Eastern Ry. Co., 79 Minn. 245, 82 N. W. 576. What is there said on this subject is applicable to the case at bar:

"The defendant ought not to be required to anticipate that so unusual and peculiar a combination of circumstances would occur as to occasion so extraordinary and unexpected an accident from such a commonplace and ordinarily simple cause."

For these reasons, I dissent, and am authorized to state that Justice LOVELY concurs therein.